**Mark J. Fucile, OSB No. 822625**
mark@frllp.com
**Daniel K. Reising, OSB No. 964104**
dan@frllp.com
FUCILE & REISING LLP
2512 SE 25th Ave., Ste. 303
Portland OR 97202
Tel:  503.224.4894
Fax: 503.224.4332
Attorneys for Defendants
Ford Motor Company and
Navistar, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| BONNIE MCGINNIS, as Personal Representative for the Estate of MICHAEL D. MICGINNIS, | Civil No.  3:21-CV-1189 |
| Plaintiff, | **NOTICE OF REMOVAL** |
| v. | **(DIVERSITY OF CITIZENSHIP)** |
| AKEBONO BRAKE CORPORATION, et al., | |
| Defendants. | |

TO:  **CLERK UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON and PLAINTIFF BONNIE MCGINNIS**

PLEASE TAKE NOTICE that pursuant to 28 USC §§ 1441 and 1446 defendant Ford Motor Company removes this action from the Circuit Court of the State of Oregon in and for Multnomah County to the United States District Court for the District of Oregon.  In support of removal, defendant states:

### JURISDICTION

1. This Court has original jurisdiction over this action under 28 USC § 1332. It is subject to removal under 28 USC § 1441 because it is a civil action between

fucile & reising LLP
2512 se 25th ave.,  ste 303
portland or 97202
p 503.224.4894 f 503.224.4332

citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

2.      Plaintiff is an Oregon citizen.

3.      Defendant Akebono Brake Corporation is a Michigan corporation with its principal place of business in Michigan.

4.      Defendant ArvinMeritor, Inc. is a Nevada corporation with its principal place of business in Michigan.

5.      Defendant BWDAC, Inc. is an inactive Delaware corporation.

6.      Defendant Carlisle Industrial Brake & Friction, Inc. is a Delaware corporation with its principal place of business in Ohio.

7.      Defendant Caterpillar, Inc. is a Delaware corporation with its principal place of business in Illinois.

8.      Defendant Cummins, Inc. is an Indiana corporation with its principal place of business in Indiana.

9.      Defendant Daimler Trucks North America, LLC is owned by Daimler Trucks & Buses US Holdings LLC, which is owned by Daimler AG, a publicly traded German corporation with its principal place of business in Germany.

10.     Defendant DCo, LLC is owned by Enstar Holdings (US) LLC, which is wholly owned by Enstar USA, Inc., a Georgia corporation with its principal place of business in Florida.

11.     Defendant Eaton Corporation is an Ohio corporation with its principal place of business in Ohio.

12.     Defendant Fleetpride, Inc. is an Alabama corporation with its principal place of business in Texas.

fucile & reising LLP
2512 se 25th ave.,  ste 303
portland or 97202
p 503.224.4894 f 503.224.4332

13.     Defendant Ford Motor Company is a Delaware corporation with its principal place of business in Michigan.

14.     Defendant Genuine Parts Company is a Georgia corporation with its principal place of business in Georgia.

15.     Defendant Hennessy Industries, LLC is a wholly owned subsidiary of Vontier Corporation, which is a Delaware corporation with its principal place of business in North Carolina.

16.     Defendant Honeywell International, inc. is a Delaware corporation with its principal place of business in North Carolina.

17.     Defendant Lear Siegler Diversified Holdings Corporation is a dissolved Delaware corporation.

18.     Defendant Mack Trucks, Inc. is a Pennsylvania corporation with its principal place of business in North Carolina.

19.     Defendant Metropolitan Life Insurance Company is a New York corporation with its principal place of business in New York.

20.     Defendant Morse Tec, LLC is owned by Enstar Holdings (US) LLC, which is wholly owned by Enstar USA, Inc. a Georgia corporation with its principal place of business in Florida.

21.     Defendant Navistar, inc. is a Delaware corporation with its principal place of business in Illinois.

22.     Defendant Pneumo Abex LLC is owned by the Pneumo Abex Asbestos Claims Settlement Trust, a Delaware statutory trust and IRS qualified settlement fund. No individual or entity has any form of beneficial ownership in the Pneumo Abex Asbestos Claims Settlement Trust.  The Trustees of the Pneumo Abex Asbestos Claims

fucile & reising LLP
2512 se 25th ave.,  ste 303
portland or 97202
p 503.224.4894 f 503.224.4332

Settlement Trust are residents of Maryland, Pennsylvania and Delaware.  Pneumo Abex LLC is the beneficiary of the Pneumo Abex Claims Settlement Trust.

23.     Defendant Titus-Will Enterprises, Inc. is a Washington Corporation with its principal place of business in Washington.

24.     Defendant Toyota Motor Sales U.S.A., Inc. is a California corporation with its principal place of business in Texas.

25.     Defendant Tracy Industries, Inc. is a Michigan corporation with its principal place of business in California.

**GROUNDS FOR REMOVAL**

26.     Plaintiff filed this action on or about July 2, 2021 in the Oregon Circuit Court for Multnomah County, captioned *Bonnie McGinnis, as Personal Representative for the Estate of Michael D. McGinnis v. Akebono Brake Corporation, et al.,* Case No.21cv26117 (the Oregon Circuit Court Case).

27.     A copy of the summons and complaint purportedly served on Ford on July 14, 2021 in the Oregon Circuit Court Case is attached as Exhibit 1 in accordance with 28 USC § 1446(a).

28.     Plaintiff asserts a right to recover economic damages in an amount not less than $24,010,000.

29.     This Notice of Removal is being filed within one year of the date of filing of the original complaint in the Oregon Circuit Court Case and within 30 days of service on defendant Ford Motor Company.  Removal is, therefore, timely under 28 USC § 1446(b).

30.     All of the defendants who were served in the Oregon Circuit Court Case consent to removal.

fucile & reising LLP
2512 se 25th ave.,  ste 303
portland or 97202
p 503.224.4894 f 503.224.4332

31.    Ford will file a copy of this Notice of Removal with the Clerk of the Multnomah County Circuit Court and give notice to plaintiff as required by 28 USC § 1446(d).

## RESERVATION OF DEFENSES

32.    Ford reserves all available defenses, including lack of personal jurisdiction.

Dated:   August 12, 2021.


FUCILE & REISING LLP


s/ Daniel K. Reising
Daniel K. Reising, OSB No. 964104
dan@frllp.com
2512 SE 25th Ave., Ste. 303
Portland, Oregon 97202
Tel:  503.224.4894
Fax:  503.224.4332
Attorneys for Defendants
Ford Motor Company and
Navistar, Inc.

NOTICE OF REMOVAL                        5                fucile & reising LLP
2512 se 25th ave., ste 303
portland or 97202
p 503.224.4894 f 503.224.4332

# EXHIBIT

# 1

 CT Corporation

**Service of Process Transmittal**
07/14/2021
CT Log Number 539903493

TO:   Chuck Morici
      Ford Motor Company
      1 American Rd
      Dearborn, MI 48126-2798

RE:   **Process Served in Oregon**

FOR:  Ford Motor Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Bonnie McGinnis, as Personal Representative for the Estate of Michael D. McGinnis, Pltf. vs. Akebono Brake Corporation, etc., et al., Dfts. // To: Ford Motor Company |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Multnomah County Circuit Court, OR<br>Case # 21CV26117 |
| **NATURE OF ACTION:** | Asbestos Litigation - Fatal Injury/Wrongful Death |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Salem, OR |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/14/2021 at 15:00 |
| **JURISDICTION SERVED :** | Oregon |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date of service |
| **ATTORNEY(S) / SENDER(S):** | Alice Emerson<br>Maune Raichle Hartley French & Mudd, LLC<br>80 SE Madison Street, Suite 310<br>Portland, OR 97214<br>800-358-5922 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/15/2021, Expected Purge Date: 07/20/2021<br><br>Image SOP |
| **REGISTERED AGENT ADDRESS:** | CT Corporation System<br>780 Commercial Street? SE<br>Ste 100<br>Salem, OR 97301<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

NOTICE OF REMOVAL
EXHIBIT 1

1

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

2

IN THE COUNTY OF MULTNOMAH

3

**BONNIE MCGINNIS,** as Personal
Representative for the Estate of **MICHAEL D.**

4

**MCGINNIS,**

5

Plaintiff,

6

vs.

7

**AKEBONO BRAKE CORPORATION,** et al.

8

Defendants.

9

Case No. 21CV26117

SUMMONS

10

11

**TO:    FORD MOTOR COMPANY c/o C T Corporation System**
       **780 Commercial Street SE, Suite 100, Salem, OR 97301**

12

    You are hereby required to appear and defend the complaint filed against you in the above-entitled action within

13

thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want
thereof, plaintiffs will apply to the court for the relief demanded in the complaint.

14

**NOTICE TO DEFENDANT: READ THESE PAPERS CAREFULLY!**
You must "appear" in this case or the other side will win

15

automatically. To "appear" you must file with the court a legal
document called a "motion" or "answer." The "motion" or "answer"

16

must be given to the court clerk or administrator within 30 days along
with the required filing fee. It must be in proper form and have proof
of service on the plaintiffs' attorney or, if the plaintiffs do not have an

17

attorney, proof of service on the plaintiffs. If you have questions, you
should see an attorney immediately. If you need help finding an

18

attorney, you may contact the Oregon State Bar's Lawyer Referral
Service online at oregonstatebar.org or by calling (503) 684-3763 (in

19

the Portland metropolitan area) or toll-free elsewhere in Oregon at
(800) 452-7636.

MAUNE RAICHLE HARTLEY FRENCH &
MUDD, LLC

  *s/ Alice Emerson*
Kelly Battley, OR Bar #175534
Alice Emerson, OR Bar #162938
Casey Dineen, OR Bar #143076
80 SE Madison Street, Suite 310
Portland, OR 97214
Phone: (800) 358-5922

*Counsel for Plaintiff*

20

STATE OF OREGON, County of Multnomah

21

    I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete
copy of the original summons in the above entitled action.

22

                                     *s/ Alice Emerson*
                                     Alice Emerson, OR Bar #162938

23

    TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS: You are hereby directed to serve

24

a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s)
or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the

25

reverse hereof or upon a separate similar document which you shall attach hereto.

26

                                     *s/ Alice Emerson*
                                     Alice Emerson, OR Bar #162938

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**

SUMMONS - 1                          80 SE MADISON STREET, SUITE 310
                                     PORTLAND, OR 97214
                                     TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1

2

3

4                    IN THE CIRCUIT COURT FOR THE STATE OF OREGON

5                         IN THE COUNTY OF MULTNOMAH

6

7   **BONNIE MCGINNIS**, as Personal           Case No.
    Representative for the Estate of **MICHAEL D.**
8   **MCGINNIS**,                              COMPLAINT

9              Plaintiff,                       (Fraudulent Misrepresentation/Deceit;
                                                Negligence; Strict liability, Loss of
10  vs.                                         Consortium, Wrongful Death,
                                                Negligence-Wrongful Death)
11  **AKEBONO BRAKE CORPORATION**, a
    Michigan Corporation;                       DEMAND FOR JURY TRIAL
12  **ARVINMERITOR, INC.**, a Nevada
    Corporation;                                CLAIM NOT SUBJECT TO
13  **BWDAC, INC.**, a Delaware Corporation;    MANDATORY ARBITRATION
    **CARLISLE INDUSTRIAL BRAKE &**
14  **FRICTION, INC. f/k/a MOTION CONTROL**     PRAYER AMOUNT: $24,010,000.00
    **INDUSTRIES, INC.**, a Delaware Corporation;
15  **CATERPILLAR, INC.**, a Delaware           ORS. 21.160(1)(e)
    Corporation;
16  **CUMMINS, INC.**, an Indiana Corporation;
    **DAIMLER TRUCKS NORTH AMERICA,**
17  **LLC**, Limited Liability Company organized in
    Delaware;
18  **DCO, LLC f/k/a DANA COMPANIES, LLC**, a
    Limited Liability Company organized in Virginia;
19  **EATON CORPORATION**, an Ohio
    Corporation;
20  **FLEETPRIDE, INC.**, an Alabama Corporation;
    **FORD MOTOR COMPANY**, a Delaware
21  Corporation;
    **GENUINE PARTS COMPANY**, a Georgia
22  Corporation;
    **HENNESSY INDUSTRIES, LLC, Individually**
23  **and through its predecessor-in-interest Ammco**
    **Tools**, a Delaware Corporation;
24

25

26

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*        **MAUNE RAICHLE HARTLEY**
*COMPLAINT - 1*                                      **FRENCH & MUDD LLC**
                                                80 SE MADISON STREET, SUITE 310
                                                    PORTLAND, OR 97214
                                          TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1  **HONEYWELL INTERNATIONAL, INC.,**
   **Individually and as successor to AlliedSignal,**
2  **Inc. and The Bendix Corporation**, a Delaware
   Corporation;
3  **LEAR SIEGLER DIVERSIFIED HOLDINGS**
   **CORPORATION**, a dissolved Delaware
4  Corporation;
   **MACK TRUCKS, INC.,** a Pennsylvania
5  Corporation;
   **METROPOLITAN LIFE INSURANCE**
6  **COMPANY**, a New York Corporation;
7  **MORSE TEC, LLC f/k/a BORGWARNER**
   **MORSE TEC LLC, as successor-by-merger to**
8  **Borg-Warner Corporation**, a Limited Liability
   Company organized in Delaware;
9  **NAVISTAR, INC.,** a Delaware Corporation;
10 **PNEUMO ABEX LLC, Individually and as**
   **successor-by-merger to PNEUMO ABEX**
11 **CORPORATION, successor-in-interest to**
   **ABEX CORPORATION f/k/a AMERICAN**
12 **BRAKE SHOE COMPANY, f/k/a**
   **AMERICAN BRAKE SHOE and FOUNDRY**
13 **COMPANY including the AMERICAN**
14 **BRAKEBLOK DIVISION, successor-by-**
   **merger to the AMERICAN BRAKE SHOE**
15 **and FOUNDRY COMPANY and THE**
   **AMERICAN BRAKEBLOK**
16 **CORPORATION, f/k/a THE AMERICAN**
17 **BRAKE MATERIALS CORPORATION,** a
   Limited Liability Company organized in
18 Delaware;
   **TITUS-WILL ENTERPRISES, INC.,** a
19 Washington Corporation;
   **TOYOTA MOTOR SALES U.S.A., INC.,** a
20 California Corporation;
   **TRACY INDUSTRIES, INC., Individually and**
21 **d/b/a Genuine Parts Distributors**, a Michigan
   Corporation;
22
23          Defendants.
24
25      Plaintiff BONNIE MCGINNIS, as Personal Representative for the Estate of MICHAEL
26  D. MCGINNIS, alleges:

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
*COMPLAINT - 2*

MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1    **FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

2                                                              1.

3      Plaintiff BONNIE MCGINNIS resides in Oregon and is the widow and Personal

4 Representative of Decedent MICHAEL D. MCGINNIS, who, as a result of his exposures to

5 asbestos, contracted permanent asbestos-related injury and/or disease, including biologic

6 response scarring and injury, clinically evident mesothelioma from asbestos exposure, pleural

7 disease, obstructive disease, as well as lung, pleura, and other asbestos-related damage to his

8 person.

9                                                              2.

10      As a result of Decedent's inhalation or ingestion of asbestos fibers through Decedent's

11 exposure to Defendants' asbestos, Decedent sustained the asbestos-related injuries and/or

12 disease described above in paragraph number 1, which caused and/or contributed to causing his

13 death.

14                                                              3.

15      Decedent MICHAEL D. MCGINNIS was diagnosed with mesothelioma in January

16 2021. Decedent died as a result of his asbestos-related disease on March 23, 2021.

17                                                              4.

18      For the vast majority of the times material herein, Decedent was a resident of Oregon.

19                                                              5.

20      At all material times, Defendants engaged in their respective business activities, and

21 are/were the successor, successor in business, successor in product line or a portion thereof,

22 assign, alter ego, agent, predecessor, predecessor in business, predecessor in product line or a

23 portion thereof, parent, affiliate, subsidiary, wholly or partially owned by, or the whole or partial

24 owner of, or member in their respective "alternate entities." Each Defendant is liable under the

25 law for the tortious conduct of each and every one of its respective alternate entities in that the

26 Defendant: exercised control over the alternate entities, expressly or impliedly authorized the

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1   alternate entities to act, expressly or impliedly agreed to assume the liability of the alternate

2   entities, transacted with the alternate entities in such a way that said transaction(s) amounted to

3   a consolidation or merger of the entities, is/was a mere continuation under the law of each and

4   every alternate entity, and/or has acquired the assets, product line, or a portion thereof, of each

5   alternate entity, continues to enjoy the goodwill originally attached to each alternate entity, has

6   the ability to assume the risk-spreading role of each alternate entity, and there has been a virtual

7   destruction of Plaintiff's remedy against each alternate entity caused by the actions of

8   Defendant, to wit:

9   (a)   Defendant Akebono Brake Corporation is a Michigan Corporation and was engaged in

10       the business of designing, manufacturing, selling, supplying, distributing, and/or

11       specifying asbestos-containing products, including automotive friction products.

12       Akebono Brake Corporation is named as a Manufacturer, Distributor, and Supplier

13       Defendant.

14   (b)   Defendant ArvinMeritor, Inc. is a Nevada Corporation and was engaged in the business

15       of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-

16       containing products, including automotive friction products. ArvinMeritor, Inc. is named

17       as a Manufacturer, Distributor, and Supplier Defendant. Defendant ArvinMeritor, Inc.'s

18       alternate entities include, but are not limited to, Rockwell brakes.

19   (c)   Defendant BWDAC, Inc. is a Delaware Corporation and was engaged in the business of

20       designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-

21       containing products, including automotive friction products. BWDAC, Inc. is named as

22       a Manufacturer, Distributor, and Supplier Defendant.

23   (d)   Defendant Carlisle Industrial Brake and Friction, Inc. is a Delaware Corporation and was

24       engaged in the business of designing, manufacturing, selling, supplying, distributing,

25       and/or specifying asbestos-containing products, including automotive friction products.

26       Carlisle Industrial Brake and Friction, Inc. is named as a Manufacturer, Distributor, and

*McGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 4

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1   Supplier Defendant.  Defendant Carlisle Industrial Brake and Friction, Inc.'s alternate

2   entities include, but are not limited to, Motion Control Industries, Inc.

3   (e)  Defendant Caterpillar, Inc. is a Delaware Corporation and was engaged in the business

4   of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-

5   containing products, including automotive friction products.  Defendant Caterpillar, Inc.

6   is named as a Manufacturer, Distributor, and Supplier Defendant.

7   (f)  Defendant Cummins, Inc. is an Indiana Corporation and was engaged in the business of

8   designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-

9   containing products, including automotive friction products.  Cummins, Inc. is named as

10   a Manufacturer, Distributor, and Supplier Defendant.

11   (g)  Defendant Daimler Trucks North America, LLC is a Limited Liability Company

12   organized in Delaware and was engaged in the business of designing, manufacturing,

13   selling, supplying, distributing, and/or specifying asbestos-containing products,

14   including automotive friction products.  Defendant Daimler Trucks North America, LLC

15   is named as a Manufacturer, Distributor, and Supplier Defendant.  Daimler Trucks North

16   America, LLC's alternate entities include, but are not limited to, Freightliner, Inc.

17   (h)  Defendant DCo, LLC f/k/a Dana Companies, LLC is a Limited Liability Company

18   organized in Virginia and was engaged in the business of designing, manufacturing,

19   selling, supplying, distributing, and/or specifying asbestos-containing products,

20   including automotive friction products.  Defendant DCo, LLC f/k/a Dana Companies,

21   LLC is named as a Manufacturer, Distributor, and Supplier Defendant.

22   (i)  Defendant Eaton Corporation is an Ohio Corporation and was engaged in the business of

23   designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-

24   containing products, including automotive friction products.  Eaton Corporation is named

25   as a Manufacturer, Distributor, and Supplier Defendant.

26

*McGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 5

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1   (j)    Defendant FleetPride, Inc. is an Alabama Corporation and was engaged in the business

2         of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-

3         containing products, including automotive friction products. FleetPride, Inc. is named as

4         a Manufacturer, Distributor, and Supplier Defendant.  Defendant FleetPride, Inc.'s

5         alternate entities include, but are not limited to, Friction Materials Co. and Specialized

6         Sales and Service, Inc.

7   (k)    Defendant Ford Motor Company is a Delaware Corporation and was engaged in the

8         business of designing, manufacturing, selling, supplying, distributing, and/or specifying

9         asbestos-containing products, including automotive friction products.  Ford Motor

10        Company is named as a Manufacturer, Distributor, and Supplier Defendant.

11  (l)    Defendant Genuine Parts Company is a Georgia Corporation and was engaged in the

12        business of designing, manufacturing, selling, supplying, distributing, and/or specifying

13        asbestos-containing products, including automotive friction products.  Genuine Parts

14        Company is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant

15        Genuine Parts Company's alternate entities include, but are not limited to, NAPA and

16        National Auto Parts Association.

17  (m)   Defendant Hennessy Industries, LLC, individually and through its predecessor-in-

18        interest AMMCO Tools is a Delaware Corporation and was engaged in the business of

19        designing, manufacturing, selling, supplying, distributing, and/or specifying products to

20        manipulate asbestos-containing products, including automotive friction products.

21        Hennessy Industries, LLC is named as a Manufacturer, Distributor, and Supplier

22        Defendant. Defendant Hennessy Industries, LLC's alternate entities include, but are not

23        limited to, AMMCO Tools, Inc.

24  (n)    Defendant Honeywell International, Inc. is a Delaware Corporation and was engaged in

25        the business of designing, manufacturing, selling, supplying, distributing, and/or

26        specifying asbestos-containing products, including automotive friction products.

1      Honeywell International, Inc. is named as a Manufacturer, Distributor, and Supplier
2      Defendant. Defendant Honeywell International, Inc.'s alternate entities include, but are
3      not limited to, AlliedSignal, Inc. and The Bendix Corporation.

4  (o)  Defendant Lear Siegler Diversified Holdings Corporation is a dissolved Delaware
5      Corporation and was engaged in the business of designing, manufacturing, selling,
6      supplying, distributing, and/or specifying asbestos-containing products, including
7      automotive friction products, directly and through various predecessors and divisions
8      within those companies, including, but not limited to, Lear Siegler, Inc. and Royal
9      Industries, Inc.  Lear Siegler Diversified Holdings Corporation is named as a
10     Manufacturer, Distributor, and Supplier Defendant.

11  (p)  Defendant Mack Trucks, Inc. is a Pennsylvania Corporation and was engaged in the
12     business of designing, manufacturing, selling, supplying, distributing, and/or specifying
13     asbestos-containing products, including automotive friction products. Mack Trucks, Inc.
14     is named as a Manufacturer, Distributor, and Supplier Defendant.

15  (q)  Defendant Metropolitan Life Insurance Company ("Met Life") is a New York
16     Corporation and was engaged in the business of providing a variety of insurance
17     products, including life insurance, casualty and liability insurance, and workers'
18     compensation insurance, to a variety of customers, including corporations engaged in the
19     manufacture, distribution, and/or sale of asbestos and asbestos-containing products.

20  (r)  Defendant Morse Tec, LLC is a Limited Liability Company organized in Delaware and
21     was engaged in the business of designing, manufacturing, selling, supplying, distributing,
22     and/or specifying asbestos-containing products, including automotive friction products.
23     Morse Tec, LLC is named as a Manufacturer, Distributor, and Supplier Defendant.
24     Defendant Morse Tec, LLC's alternate entities include, but are not limited to,
25     BorgWarner Morse Tec, LLC and BorgWarner Morse Tec Corporation.

26

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 7

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1  (s)   Defendant Navistar, Inc. is a Delaware Corporation and was engaged in the business of

2           designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-

3           containing products, including automotive friction products. Defendant Navistar, Inc. is

4           named as a Manufacturer, Distributor, and Supplier Defendant.

5  (t)   Defendant Pneumo Abex, LLC is a Limited Liability Company organized in Delaware

6           and was engaged in the business of designing, manufacturing, selling, supplying,

7           distributing, and/or specifying asbestos-containing products, including automotive

8           friction products. Defendant Pneumo Abex, LLC is named as a Manufacturer,

9           Distributor, and Supplier Defendant. Defendant Pneumo Abex, LLC's alternate entities

10          include, but are not limited to, Pneumo Abex Corporation, Abex Corporation, American

11          Brake Shoe Company, American Brake Shoe and Foundry Company including the

12          American Brakeblok Division, American Brake Shoe and Foundry Company, The

13          American Brakeblok Corporation, and The American Brake Materials Corporation.

14  (u)   Defendant Titus-Will Enterprises, Inc. is a Washington Corporation and was engaged in

15          the business of designing, manufacturing, remanufacturing, selling, supplying,

16          distributing, and/or specifying asbestos-containing products, including automotive

17          friction products. Titus-Will Enterprises, Inc. is named as a Manufacturer, Distributor,

18          and Supplier Defendant. Titus-Will Enterprises, Inc.'s alternate entities include, but are

19          not limited to, TAM Engineering Corporation.

20  (v)   Defendant Toyota Motor Sales U.S.A., Inc. is a California Corporation and was engaged

21          in the business of designing, manufacturing, selling, supplying, distributing, and/or

22          specifying asbestos-containing products, including automotive friction products. Toyota

23          Motor Sales U.S.A., Inc. is named as a Manufacturer, Distributor, and Supplier

24          Defendant.

25  (w)  Defendant Tracy Industries, Inc. is a Michigan Corporation and was engaged in the

26          business of designing, manufacturing, remanufacturing, selling, supplying, distributing,

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1   and/or specifying asbestos-containing products, including automotive friction products.

2   Tracy Industries, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant.

3   Defendant Tracy Industries, Inc.'s alternate entities include, but are not limited to,

4   Genuine Parts Distributors.

5                   6.

6      At all relevant times, Defendants and/or their predecessors-in-interest are/were

7   corporations regularly engaged in the business of manufacturing, remanufacturing, designing,

8   processing, marketing, distributing, specifying, studying, and/or selling asbestos-containing

9   products, equipment utilizing asbestos-containing products, and/or equipment designed to

10   manipulate asbestos-containing products, and/or contracting work with asbestos materials in

11   such a way as to expose others, including Decedent MICHAEL D. MCGINNIS, to asbestos.

12                   7.

13      Decedent MICHAEL D. MCGINNIS was exposed to asbestos-containing products

14   which had been designed, manufactured, remanufactured, sold, supplied, distributed, and/or

15   specified by Defendants. Decedent was exposed to respirable asbestos both through his work

16   with asbestos and asbestos-containing products and through his work in the vicinity of others

17   working with said products from approximately 1965-2010. *See* Exhibit 1. During this time,

18   Decedent MICHAEL D. MCGINNIS worked as an automotive mechanic during his service in

19   the United States Army, and worked at automotive parts stores and automobile dealerships in

20   Roseburg, Oregon, Canyonville, Oregon, and briefly in California. Additionally, Decedent

21   MICHAEL D. MCGINNIS performed non-occupational automotive repair and maintenance

22   projects on his personal vehicles. He performed automotive repairs, including the replacement

23   of asbestos-containing brakes, clutches, and gaskets on various types of vehicles. He was in the

24   vicinity of other automotive mechanics performing these types of automotive maintenance and

25   repair projects. During this time, he worked as a parts counterperson handling used automobile

26   parts and opening new automobile parts at an automobile dealership and at automotive parts

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1    stores.   This involved working with and around brakes, clutches and other transmission

2    parts/components, and gaskets.   Through this work, he was exposed to dust from different

3    asbestos-containing products. At all material times, Decedent MICHAEL D. MCGINNIS was

4    exposed to airborne asbestos fibers as a result of working with and around asbestos-containing

5    products and others working with and around asbestos-containing products.   He was also

6    exposed to respirable asbestos dust through the clothing worn by his wife during her

7    employment at automotive parts supply stores and automobile dealerships, which required her

8    to work with and around asbestos-containing products, and through the resulting asbestos fibers

9    transported by his wife to their car and home.

10                                                    8.

11         Plaintiff BONNIE MCGINNIS married Decedent in 1984.  After Decedent MICHAEL

12    D. MCGINNIS passed away, Plaintiff BONNIE MCGINNIS was appointed Personal

13    Representative of his estate in Douglas County, State of Oregon.  Attached hereto as Exhibit 2

14    are the Letters of Administration filed in Douglas County, State of Oregon.

15

16                                **JURISDICTION AND VENUE**

17                                                    9.

18         This Court has jurisdiction in this action because, at all material times, Defendants

19    conducted regular and sustained business activities in Oregon out of which the claims for relief

20    arose and/or Defendants may be served with process in Oregon.  By registering to do business

21    in Oregon and by doing business in Oregon or in selling products in Oregon, Defendants have

22    consented to *in personam* jurisdiction in Oregon for claims arising out of their Oregon contacts.

23    The exercise of jurisdiction here arises out of asbestos exposures that occurred primarily in

24    Oregon.  At all materials times, the Defendants had been regularly engaged in the business of

25    manufacturing, remanufacturing, designing, processing, marketing, distributing, supplying,

26

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 10

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1  using, installing, applying, rebranding for sale, and/or selling products containing asbestos fiber,

2  and/or equipment for use with such products, in Oregon.

3                                            10.

4          Venue is proper because, at all material times, one or more Defendants resided and/or

5  conducted regular and sustained business activities in Multnomah County, Oregon, pursuant to

6  ORS 14.080.

7

8                              **FIRST CLAIM FOR RELIEF**

9                              (Negligence – Wrongful Death)

10                                           11.

11         Plaintiff realleges and incorporates herein by reference each and every paragraph above

12  as though fully set forth herein.

13                                           12.

14         Defendants had a duty to use reasonable or ordinary care to avoid harming Decedent in

15  the manufacture, distribution, supply, specification, utilization, and/or otherwise making

16  available their asbestos and asbestos-containing products.

17                                           13.

18         Defendants, and each of them, created a foreseeable risk of harm to Decedent through,

19  among other things, the following conduct, acts, or omissions:

20  (a)    In failing to determine the level of airborne asbestos fibers emitted by the products when

21         the products were being used and/or handled by the end user;

22  (b)    In failing to conduct tests to determine the amount of asbestos to which Decedent, or

23         similarly situated workers, would be exposed when engaging in the use of the product(s);

24  (c)    In failing to caution or warn individual workers, including Decedent, regarding hazards

25         associated with the use of the product(s);

26

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 11

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

(d) In failing to provide sufficient or adequate warnings and/or instructions of the harm caused by exposure to Defendants' asbestos-containing products when they knew or should have known of that harm;

(e) In failing to withdraw or otherwise recall asbestos-containing products from the market, remove from the premises, and/or provide other retroactive measures to eliminate or mitigate the harm caused by Defendants' asbestos-containing products prior to Decedent's exposure, when they knew or should have known, as set forth herein, of their dangerous propensities; and/or

(f) In designing, manufacturing, selling, distributing, delivering, processing, specifying, applying, and/or installing: parts, equipment, vehicles, machinery, technologies, and/or systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

14.

Medical and scientific literature describing the dangers and toxicity of asbestos fibers dates back to before the turn of the twentieth century. By 1930, it was conclusively established and made known to the medical and industrial communities that asbestos causes asbestosis. As early as 1934, the members of the asbestos industry became aware that even persons not working directly with asbestos and asbestos-containing products suffered harm due to exposure to asbestos. As early as 1935, sectors of the state and federal government began voicing their concern, through publication of special and health bulletins, about the dangers of asbestos. Inquiry into the link between asbestos and lung cancer became public knowledge by 1935, and in 1949 it was established and made known that asbestos is a cause of lung cancer. By 1960, it was conclusively established and made known to the medical and industrial communities that asbestos causes mesothelioma. Beginning as early as 1930 and continuing for at least four decades, there was a significant amount of study and literature commissioned and written by

*McGinnis v. Akebono Brake Corporation -*
COMPLAINT - 12

MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1  and for the industrial community and published in industry journals. By 1963, there were over

2  300 articles available in English regarding asbestos-related illness.

15.

4  The Oregon Industrial Accident Commission Safety Code for Prevention and Control of

5  Occupational Disease (adopted December 15, 1945, revised September 1, 1949) lists asbestos

6  as an atmospheric contaminant against which precautions should be taken to prevent exposure.

16.

8  Beginning in approximately the early 1960s, warning labels regarding the hazards of

9  asbestos were placed on some asbestos-containing products.

17.

11  Through their conduct as described herein, Defendants unreasonably created a

12  foreseeable risk to Decedent's legally protected interest to be free from physical harm by

13  causing Decedent to be exposed to asbestos and asbestos-containing products, which exposure

14  caused bodily injury, including incurable pulmonary disease, including, but not limited to,

15  mesothelioma and consequent death. Defendants knew or should have known, as set forth in

16  Paragraphs 13-16, that exposure to their asbestos and asbestos-containing products created a

17  risk of asbestos-related injury and/or disease and consequent death.

18.

19  Because of Defendants' knowledge, and/or what they should have known, as set forth in

20  Paragraphs 13-16, of the foreseeable risks of asbestos-related injury and/or death posed by

21  exposure to and contact with their products, Defendants' conduct as described herein was

22  unreasonable in light of the risks involved. Defendants' conduct as described herein caused

23  Decedent's injuries and consequent death and damages as set forth herein, in that, among other

24  things, Decedent was within the class of persons and Decedent's injury within the general type

25  of potential incidents and injuries that rendered Defendants' conduct negligent.

26

*McGinnis v. Akebono Brake Corporation -*
Complaint - 13

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE Madison Street, Suite 310
Portland, OR 97214
Tel: (314) 241-2003  Fax: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1

## SECOND CLAIM FOR RELIEF

2

(Fraudulent Misrepresentation/Deceit for Metropolitan Life)

3

19.

4     Plaintiff realleges and incorporates herein by reference each and every paragraph above

5     as though fully set forth herein.

6

20.

7     Johns-Manville Corporation, Johns-Manville Sales Corporation, Raymark Industries,

8     Inc. (formerly Raybestos-Manhattan, Inc.), and Owens Corning are corporations, and they, or

9     their corporate predecessors, were, during the time relevant to the allegations herein, in the

10    business of manufacturing and distributing asbestos and asbestos-containing products used

11    and/or handled by Decedent MICHAEL D. MCGINNIS and/or used by others in his presence.

12

21.

13    Defendant Metropolitan Life Insurance Company ("Met Life") is a corporation that

14    became involved with the asbestos industry in the late 1920s by, among other activities,

15    performing health studies on asbestos miners at its policyholder companies and conducting

16    other studies related to asbestos and disease.  Met Life invested in asbestos companies and

17    provided them with insurance policies, including those named in paragraph 5. The chairman of

18    the board of Owens Corning was a member of the Met Life board of directors.  In particular,

19    Met Life had a close relationship with Johns-Manville.  It invested money in Johns-Manville,

20    provided a $25 million line of credit to Johns-Manville, provided group health and life insurance

21    to Johns-Manville, and provided industrial hygiene services to Johns-Manville in the form of

22    dust counts, employee training, employee health exams, and personal protective equipment

23    recommendations.  Met Life and its agent, Dr. Anthony Lanza, were viewed as experts on

24    industrial dusts such as asbestos.

25

26

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 14

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

22.

By the early 1920s, Met Life had knowledge that asbestos exposure could lead to fatal asbestos-related diseases. Met Life knew in 1921 that asbestos workers were in a hazardous occupation because of exposure to asbestos dust. Met Life was also aware of high claim rates for lung disorders made against one of its group policy holders. An actuary noted in 1935 that claims were exceeding premiums at Johnson's Co., a company engaged in asbestos mining and manufacture. In response, Met Life raised the premiums for asbestos miners by 40 percent for accident and health coverage, compared with industries it deemed non-hazardous, in order to make insuring asbestos workers profitable.

23.

Starting in 1928, Met Life sponsored studies of asbestos dust and asbestos-related disease in Canadian mines and mills, including those of Johns-Manville. Those studies revealed that miners and mill workers were contracting asbestosis at relatively low levels of dust. McGill University, which conducted the studies, sought permission from Met Life to publish the results. The results of these studies were never published. Met Life prepared its own report of these studies, but agreed not to publish it without the consent of the mines' owners. The report was never published.

24.

Between 1929 and 1931, Met Life studied dust levels and disease at five U.S. plants manufacturing asbestos-containing products, including a Johns-Manville plant. Those studies showed that substantial numbers of workers were contracting asbestosis at exposure levels less than half of what became the Threshold Limit Value ("TLV") of 5 million parts per cubic foot. The report prepared by Met Life was never published or disseminated to the workers, but was instead only given to plant owners.

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 15

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

25.

In 1932, Met Life studied dust levels and disease at the Johns-Manville plant in Manville, New Jersey. Results were consistent with those of the Canadian mine and five U.S. plant studies. The results of this study were never published.

26.

In 1934, Johns-Manville and others companies whose plants Met Life had studied agreed with Met Life that it should issue a report of its studies. Met Life submitted a draft of its report to Johns-Manville, who requested, for legal and business reasons, that Met Life make several critical changes to the draft including: 1) deleting the conclusion that the permissible TLV for asbestos be less than that for silica, an industrial dust also known to cause lung disease when inhaled; and 2) adding the phrase that asbestosis clinically appeared to be milder than silicosis, a disease caused by inhalation of silica. Met Life, through its employee Dr. Anthony Lanza, made the changes that Johns-Manville requested.

27.

The altered report was published in 1935. It was intentionally misleading because it stated that workers could be exposed to a higher level of asbestos dust without developing disease than what the studies had found, and because it stated that asbestosis was a less serious disease than silicosis.

28.

Johns-Manville and the other companies whose plants Met Life had studied desired to promote a false TLV that would help them defend lawsuits and workers' compensation claims for injury from exposure to asbestos dust. Using the altered 1935 report, these companies and Met Life, working together and through associations appearing to be concerned with public health (such as the Air Hygiene Foundation) but actually controlled by the companies and Met Life, successfully promoted a TLV of 5 million parts per cubic foot – more than twice as high as TLVs known to Met Life to cause disease.

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE Madison Street, Suite 310
Portland, OR 97214
Tel: (314) 241-2003  Fax: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1

29.

2    In 1945, the U.S. War Production Board ordered the New Jersey Department of Health

3    to investigate the Johns-Manville plant in Manville, New Jersey, for unhealthy working

4    conditions. Met Life intervened by telling the Director of Industrial Hygiene for New Jersey

5    that any health hazards were under control. The investigation was subsequently closed.

6

30.

7    The Air Hygiene Association became known as the Industrial Hygiene Foundation. Met

8    Life was a member, and Dr. Anthony Lanza served on the board of trustees and as chairman of

9    its medical committee from the 1930s until the 1950s.

10

31.

11    In 1947, an engineer with the Industrial Hygiene Foundation conducted a study of dust

12    levels and disease in asbestos manufacturing plants, including a Johns-Manville plant. The

13    study revealed what Met Life had known for over a decade: the TLV of 5 million parts per

14    cubic foot did not prevent disease. The study was kept confidential.

15

32.

16    In 1936, Johns-Manville and nine other companies in the asbestos industry agreed to

17    underwrite studies on the health hazards of asbestos dust to be conducted by the Saranac

18    Laboratory. All findings were to be the confidential property of Johns-Manville and the other

19    companies, and reports of the findings were to be submitted for their approval before

20    publication.

21

33.

22    By 1946, Dr. Anthony Lanza had been made a member of the board of trustees of the

23    parent of the Saranac Laboratory. The studies done by the Saranac Laboratory again confirmed

24    that the TLV of 5 million parts per cubic foot was inadequate to prevent disease and showed a

25    link between exposure to asbestos and cancer.

26

*McGinnis v. Akebono Brake Corporation -*
Complaint - 17

MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

34.

In 1947, Dr. Anthony Lanza and the companies funding the Saranac studies arranged to publish an altered report of the studies' findings. Among the findings that were not included in the published report were the inadequate TLV of 5 million parts per cubic foot and the link between asbestos exposure and cancer.

35.

Dr. Anthony Lanza retired from Met Life in 1948 but continued to have his expenses paid by Met Life until the early 1950s. Dr. Anthony Lanza took a position at New York University (funded by Met Life), and became a member of the Cancer Prevention Committee of New York.

36.

During this time, Dr. Anthony Lanza continued to hold himself out as an expert on the health hazards of asbestos. In this capacity, he publicly promoted Met Life's false reports and disputed any studies that showed the TLV of 5 million parts per cubic foot was unsafe and any studies that showed a link between asbestos and cancer.

37.

In 1956, Met Life was still a member of the Industrial Hygiene Foundation, and employed a member of the Industrial Hygiene Foundation's medical committee. The Industrial Hygiene Foundation undertook a study of Canadian asbestos miners and found that a significant number of miners diagnosed with asbestosis also suffered from cancer. However, the final report that was published in 1957 was edited to remove all references to the cancer rate and falsely concluded that the miners did not suffer from a higher cancer rate than the general population.

38.

The actions of Met Life described in paragraphs 21-37 were done with the intent to mislead the general public, including Decedent MICHAEL D. MCGINNIS, about the health

*McGinnis v. Akebono Brake Corporation -*
Complaint - 18

**MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC**
80 SE Madison Street, Suite 310
Portland, OR 97214
Tel: (314) 241-2003  Fax: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1    hazards of asbestos and/or with reckless disregard for whether the general public, including

2    Decedent MICHAEL D. MCGINNIS, would be misled about the health hazards of asbestos.

3                              39.

4    Decedent MICHAEL D. MCGINNIS, and the general public, reasonably but unwittingly

5    relied upon the representations made by Met Life regarding the health hazards of asbestos.

6                              40.

7    As a direct and proximate result of this reliance, Decedent MICHAEL D. MCGINNIS

8    remained unaware and uninformed of the hazards of asbestos, failed to take adequate

9    precautions and was thereby exposed to, inhaled, and breathed asbestos fibers, causing him to

10    develop mesothelioma.

11

12                    **THIRD CLAIM FOR RELIEF**

13                  (Negligence for Metropolitan Life)

14                             41.

15    Plaintiff realleges and incorporates herein by reference each and every paragraph above

16    as though fully set forth herein.

17                              42.

18    Met Life began in the late 1920s and early 1930s to conduct scientific research on the

19    effects of exposure to asbestos and to study asbestos workers. In undertaking such research and

20    studies, Met Life forestalled others, including governmental entities, from performing and

21    conducting such research and studies.

22                              43.

23    It was foreseen and intended that this undertaking would affect the state of scientific

24    information about the hazards and dangers of asbestos.

25

26

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1

44.

2      Met Life had a duty to the general public and persons such as Decedent MICHAEL D.

3  MCGINNIS to conduct its research competently and without bias, and to fully and truthfully

4  disseminate the information gained therefrom.  The risk of harm from failing to do so was

5  foreseeable based on the information known or knowable to Met Life.

6

45.

7      Met Life failed to exercise reasonable care by failing to conduct the research competently

8  and without bias, and to fully and truthfully disseminate the information gained therefrom.

9  These failures unreasonably created a foreseeable risk to Decedent's legally protected interest

10  to be free from physical harm, and he was within the class of persons and his injury, and

11  subsequent death, within the class of incidents and injuries that rendered Met Life's conduct

12  negligent.

13

46.

14      Decedent MICHAEL D. MCGINNIS, and others similarly situated, unwittingly relied

15  upon the competency, fullness, and truth of Met Life's research and reporting, and as a result,

16  remained unaware and uninformed of the hazards of asbestos and asbestos-containing products,

17  failed to take adequate precautions, and was subsequently exposed to asbestos.  As a result of

18  said exposure, Decedent MICHAEL D. MCGINNIS developed mesothelioma.

19

20                          **FOURTH CLAIM FOR RELIEF**

21            (Negligence for Manufacturer, Distributor and Supplier Defendants)

22

47.

23      Plaintiff realleges and incorporates herein by reference each and every paragraph above

24  as though fully set forth herein.

25

26

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 20

MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1                                              48.

2          At all relevant times herein, Defendants' products were employed in the manner and

3    purposes for which they were intended and/or in a way that was foreseeable and/or should have

4    been foreseen by Defendants.

5                                              49.

6          At all relevant times herein, Defendants had a duty to exercise reasonable care and

7    caution for the safety of Decedent MICHAEL D. MCGINNIS and others.    Defendants

8    unreasonably created a foreseeable risk of harm to Decedent's legally protected interest to be

9    free from physical harm as they knew or should have known that the asbestos fibers contained

10   in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons

11   inhaling, breathing, or otherwise being exposed to them.    Defendants' conduct was

12   unreasonable as they knew or should have known that asbestos is capable of causing disease,

13   including mesothelioma.

14                                             50.

15         Defendants failed to exercise ordinary care and caution for the safety of Decedent

16   MICHAEL D. MCGINNIS in one or more of the following ways:

17   (a)    Included asbestos in their products, even though it was completely foreseeable and could

18          or should have been anticipated that persons such as Decedent working with or around

19          them would inhale, breathe, or otherwise be exposed to asbestos fibers;

20   (b)    Included asbestos in their products when the Defendants knew or should have known that

21          said asbestos fibers would have a carcinogenic, toxic, poisonous, and/or highly

22          deleterious effect upon the health of persons inhaling, breathing, and/or otherwise being

23          exposed to them;

24   (c)    Included asbestos and/or asbestos-containing components in their products when

25          adequate substitutes were available;

26

MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1  (d)    Failed to provide any and/or adequate warnings to persons working with and around their

2          products of the dangers of inhaling, breathing, or otherwise being exposed to the asbestos

3          fibers contained in them;

4  (e)    Failed to provide any and/or adequate instructions concerning the safe methods of

5          working with and around their products, including specific instructions on how to avoid

6          inhaling or otherwise being exposed to the asbestos fibers in them;

7  (f)    Failed to conduct tests on the asbestos-containing products designed, manufactured, sold,

8          distributed, delivered, processed, specified, applied, modified, and/or installed by the

9          Defendants in order to determine the hazards to which workers such as Decedent might

10         be exposed while working with the products; and/or

11 (g)    Designed, manufactured, sold, distributed, supplied, delivered, processed, specified,

12         applied, and/or installed equipment, vehicles, machinery, technologies, and/or systems

13         that included asbestos-containing components and required and/or specified the use of

14         asbestos-containing replacement components.

15                                         51.

16         As a direct and proximate cause of one or more of the foregoing acts or omissions,

17 Decedent MICHAEL D. MCGINNIS breathed respirable asbestos fibers which caused him to

18 develop asbestos-related disease, including mesothelioma.

19

20                         **FIFTH CLAIM FOR RELIEF**

21              (Strict liability for Manufacturer, Distributor and Supplier Defendants)

22                                         52.

23         Plaintiff realleges and incorporates herein by reference each and every paragraph above

24 as though fully set forth herein.

25

26

*McGinnis v. Akebono Brake Corporation -*
Complaint - 22

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE Madison Street, Suite 310
Portland, OR 97214
Tel: (314) 241-2003  Fax: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

53.

The asbestos and asbestos-containing products/materials manufactured and/or sold by the Defendants were unreasonably dangerous and defective in one or more of the following ways at the time they were designed and/or left the hands of Defendants:

(a)   The asbestos and/or asbestos-containing products of the Defendants were capable of causing terminal diseases, including mesothelioma, when used in the manner and purposes for which they were intended and/or in a way that was foreseeable and/or should have been foreseen by Defendants, making them unreasonably dangerous in a way not understood by the ordinary consumer;

(b)   Defendants did not provide any and/or adequate warnings and/or instructions regarding the harm caused by exposure to the asbestos contained in their products; and/or

(c)   Persons such as Decedent who came into contact with the asbestos contained in Defendants' products were not advised of the dangers inherent in exposure to asbestos and were not advised to take any and/or adequate steps to avoid exposure to asbestos.

54.

Defendants' products were intended to, and did in fact, reach Decedent MICHAEL D. MCGINNIS, and others similarly situated, without substantial change in their condition.

## SIXTH CLAIM FOR RELIEF

(Negligence for Hennessy Industries, LLC)

55.

Plaintiff realleges and incorporates herein by reference each and every paragraph above as though fully set forth herein.

*McGINNIS v. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 23

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003   FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1

56.

2   At all relevant times herein, Defendants' products were employed in the manner and

3   purposes for which they were intended and/or in a way that was foreseeable and/or should have

4   been foreseen by Defendant.

5

57.

6   At all relevant times herein, Defendant had a duty to exercise reasonable care and caution

7   for the safety of Decedent MICHAEL D. MCGINNIS and others. Defendant unreasonably

8   created a foreseeable risk to Decedent's legally protected interest to be free from physical harm

9   in that Defendant knew or should have known that the design of brake-grinding machines which

10  were distributed, sold, and used by consumers, including, but not limited to, Decedent

11  MICHAEL D. MCGINNIS, his employers, and/or others working in close proximity to him,

12  would expose him to asbestos-containing brake dust. Defendant knew or should have known

13  that the asbestos fibers had a toxic, poisonous, and highly deleterious effect upon the health of

14  persons inhaling, breathing, or otherwise being exposed to them, creating a foreseeable risk of

15  asbestos-related injury and/or disease and consequent death to Decedent and others similarly

16  situated. Defendant knew or should have known that asbestos is capable of causing disease,

17  including mesothelioma.

18

58.

19  Defendant failed to exercise ordinary care and caution for the safety of Decedent

20  MICHAEL D. MCGINNIS in one or more of the following ways:

21  (a)   Designed the brake-grinding machines with a lack of effective dust-collecting

22        mechanisms, even though it was completely foreseeable and could or should have been

23        anticipated that persons such as Decedent MICHAEL D. MCGINNIS working with or

24        around the machine would be exposed to asbestos fibers and then would inhale, breathe,

25        or otherwise be exposed to great amounts of that asbestos;

26

*McGinnis v. Akebono Brake Corporation -*
*Complaint - 24*

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003   FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

(b)    Failed to design effective dust-collecting mechanisms in its machine when Defendant knew or should have known that said asbestos fibers would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, breathing, or otherwise being exposed to asbestos thereby;

(c)    Failed to provide any or adequate warnings to persons working with and around its products of the dangers of inhaling, breathing, or otherwise being exposed to asbestos fibers in using its machine;

(d)    Failed to provide any or adequate instructions concerning the safe methods of working with and around the brake-grinding machines, including specific instructions on how to avoid inhaling, breathing, or otherwise being exposed to asbestos fibers when being around the machines in use;

(e)    Failed to conduct tests or sufficient tests on the brake-grinding machines manufactured, sold, delivered, or installed by Defendant in order to determine the hazards of asbestos fiber release to which workers such as Decedent MICHAEL D. MCGINNIS might be exposed while working with or around the brake-grinding machines;

(f)    Designed, manufactured, and sold equipment, vehicles, machinery, technologies, and/or systems that were specifically used for asbestos-containing products; and

(g)    Failed to ensure that the machines' abrading mechanisms did not come into contact with the asbestos-containing brake linings until achieving sufficient revolution velocity, temperature, and pressure, so as to convert the asbestos fibers into forsterite, a substance which does not present dangers to human health.

59.

As a direct and proximate cause of one or more of the foregoing acts or omissions, Decedent MICHAEL D. MCGINNIS breathed respirable asbestos fibers which caused him to develop asbestos-related disease, including mesothelioma.

NOTICE OF REMOVAL
EXHIBIT 1

1

## SEVENTH CLAIM FOR RELIEF

2

(Loss of Consortium)

3

60.

4       Plaintiff realleges and incorporates herein by reference each and every paragraph above

5   as though fully set forth herein.

6

61.

7       BONNIE MCGINNIS and Decedent MICHAEL D. MCGINNIS were married and living

8   together as husband and wife.

9

62.

10      Prior to Decedent MICHAEL D. MCGINNIS' injuries as alleged, and consequent death,

11  Decedent was able and did maintain a spousal relationship, to include providing society,

12  companionship, and services. As Decedent's illness worsened and through his death, and as a

13  proximate result thereof, Decedent was no longer able to maintain said relationship, to include

14  an inability to perform the work and services usually performed in the care, maintenance, and

15  management of the family home. As a proximate result thereof, BONNIE MCGINNIS has been

16  permanently deprived of the society, companionship, and services of Decedent, including the

17  performance of duties, all causing damage to BONNIE MCGINNIS.

18

63.

19      As a direct and proximate result of the acts of Defendants, their "alternative entities," and

20  each of them, and the severe injuries and consequent death caused thereby to Decedent as set

21  forth in this Complaint, Decedent's spouse has suffered, and for a long period of time will

22  continue to suffer, loss of consortium, including, but not by way of limitation, loss of services,

23  marital relations, society, comfort, companionship, love, and affection of said spouse, and has

24  suffered severe mental and emotional distress and general nervousness as a result thereof.

25

26

*McGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 26

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003   FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1

## **DAMAGES**

2                                       64.

3       Plaintiff realleges and incorporates herein by reference each and every paragraph above

4   as though fully set forth herein.

5                                       65.

6       Decedent, from the time of the manifestation of his illness and until his death, suffered

7   permanent pain, discomfort, fear, and interference with his daily activities and enjoyment of

8   life, including mental pain and suffering.

9                                       66.

10      Decedent, from the time of the manifestation of his illness and through and related to

11  his death, suffered economic damages, to include medical and other related expenses, loss of

12  income, pecuniary loss to the estate, and funeral and burial expenses.

13

14                      ## **ORS 31.600 NOT APPLICABLE**

15                                      67.

16      Plaintiff realleges and incorporates herein by reference each and every paragraph above

17  as though fully set forth herein.

18                                      68.

19      The Defendants, and each of them, engaged in the alleged conduct willfully, wantonly,

20  and/or recklessly in that the Defendants' actions and omissions presented an unreasonable and

21  highly probable risk of substantial bodily harm, yet the Defendants engaged in such conduct

22  even though they knew or should have known of said risk.

23

24

25

26

*McGinnis v. Akebono Brake Corporation -*
*Complaint - 27*

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE Madison Street, Suite 310
Portland, OR 97214
Tel: (314) 241-2003  Fax: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1    **NOTICE OF INTENT TO AMEND TO INCLUDE PUNITIVE DAMAGES**

2                                                            69.

3        Plaintiff realleges and incorporates herein by reference each and every paragraph above

4    as though fully set forth herein.

5                                                            70.

6        Plaintiff hereby gives notice of her intent to seek leave of the Court to amend her

7    complaint to seek punitive damages against each and every Defendant named in this complaint,

8    according to proof at or before the time of trial.

9

10                                                    **PRAYER**

11        **WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

12        1.      For Decedent MICHAEL D. MCGINNIS' economic damages for doctor,

13    hospital, custodial, hospice, medical, and other expenses, according to law, in an amount

14    according to proof at trial, but not to exceed $3,000,000;

15        2.      Economic damages for burial and memorial services rendered for Decedent, in

16    an amount according to proof at trial, not to exceed $10,000;

17        3.      Economic damages for pecuniary loss to Decedent's estate, according to law, in

18    an amount according to proof at trial, not to exceed $5,000,000;

19        4.      For Plaintiff BONNIE MCGINNIS' non-economic damages for the loss of

20    Decedent's companionship, society, support, affection and love, according to law, in the amount

21    according to proof at trial, not to exceed $5,000,000;

22        5.      Economic damages for pecuniary loss and loss of Decedent's services to Plaintiff

23    BONNIE MCGINNIS, in an amount according to proof at trial, not to exceed $1,000,000;

24        6.      Non-economic damages for Decedent's disability, pain, suffering, mental

25    anguish, discomfort, fear and interference with daily activities and enjoyment of life, in an

26    amount according to proof at trial, but not to exceed $10,000,000;

*McGINNIS v. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 28

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD LLC**
80 SE MADISON STREET, SUITE 310
PORTLAND, OR 97214
TEL: (314) 241-2003  FAX: (314) 241-4838

NOTICE OF REMOVAL
EXHIBIT 1

1      7.      For Plaintiff's costs and disbursements herein; and

2      8.      For such other relief as the Court deems just and appropriate according to proof

3    at trial.

4            Dated this 24th day of June, 2021.

5                                              MAUNE RAICHLE HARTLEY
                                               FRENCH & MUDD, LLC

6                                              /S/ Alice Emerson
7                                              Alice Emerson, OSB #162938
                                               Kelly Battley, OSB # 175534
                                               Daniel Casey Dineen, OSB #143076
8                                              Sarah-Ray Rundle, OSB #184388
                                               80 SE Madison Street, Suite 310
9                                              Portland, OR 97214
                                               Phone: (800) 358-5922
10                                             Fax: (314) 241-4838
                                               Counsel for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*MCGINNIS V. AKEBONO BRAKE CORPORATION -*
COMPLAINT - 29

                    **MAUNE RAICHLE HARTLEY
                     FRENCH & MUDD LLC**
                 80 SE MADISON STREET, SUITE 310
                      PORTLAND, OR 97214
              TEL: (314) 241-2003  FAX: (314) 241-4838

                    NOTICE OF REMOVAL
                        EXHIBIT 1

**EXHIBIT 1**
<u>Michael McGinnis</u>

DEFENDANTS

### Akebono Brake Corporation

*At all times material herein, Defendant Akebono Brake Corporation, a Michigan Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Akebono Brake Corporation is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Akebono Brake Corporation.

### ArvinMeritor, Inc.

*At all times material herein, Defendant ArvinMeritor, Inc., a Nevada Corporation, individually and/or through one or more alternate entities was engaged in the business of*

Exhibit 1
Page 1 of 21

NOTICE OF REMOVAL
EXHIBIT 1

*designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. ArvinMeritor, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant ArvinMeritor, Inc.'s alternate entities include, but are not limited to, Rockwell brakes.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From 1969-1971, Decedent served in the US Army as an automotive mechanic in the motor pool where he worked on asbestos-containing brakes, clutches, and gaskets.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by ArvinMeritor, Inc.

Exhibit 1
Page **2** of **21**

NOTICE OF REMOVAL
EXHIBIT 1

**BWDAC, Inc.**

At all times material herein, Defendant BWDAC, Inc., a Delaware Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. BWDAC, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant.

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

From approximately 1977-1986, Decedent worked for Orchard Auto Parts in Roseburg, Oregon, and then the NAPA store in Canyonville, Oregon, both auto parts supply stores where he, as a parts counterperson, handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, and worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components.

From approximately the 1960s-2010s, Decedent performed non-occupational automotive repair and maintenance projects on his personal vehicles, including the manipulation and replacement of asbestos-containing brakes, clutches, and gaskets on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission

Exhibit 1
Page **3** of **21**

NOTICE OF REMOVAL
EXHIBIT 1

parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by BWDAC, Inc.

### Carlisle Industrial Brake and Friction, Inc.

*At all times material herein, Defendant Carlisle Industrial Brake and Friction, Inc., a Delaware Corporation, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Carlisle Industrial Brake and Friction, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Carlisle Industrial Brake and Friction, Inc.'s alternate entities include, but are not limited to, Motion Control Industries, Inc.*

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Carlisle Industrial Brake and Friction, Inc.

### Caterpillar, Inc.

*At all times material herein, Defendant Caterpillar, Inc., a Delaware Corporation, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying propulsion systems,*

Exhibit 1
Page **4** of **21**

NOTICE OF REMOVAL
EXHIBIT 1

*heavy equipment, and machinery, which included hazardous asbestos-containing products, including, but not limited to: brake linings, parts, and assemblies; clutch facings, parts, and assemblies; exhaust systems; and gaskets.  Caterpillar, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment.  Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products.  At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Caterpillar, Inc.

### Cummins, Inc.

*At all times material herein, Defendant Cummins, Inc., an Indiana Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying asbestos-containing products, including automotive friction products.  Cummins, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment.  Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products.  At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-

Exhibit 1
Page 5 of 21

NOTICE OF REMOVAL
EXHIBIT 1

containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Cummins, Inc.

## Daimler Trucks North America, LLC

*At all times material herein, Defendant Daimler Trucks North America, LLC, a limited liability company organized in Delaware, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying asbestos-containing products, including automotive friction products. Daimler Trucks North America, LLC is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Daimler Trucks North America, LLC s alternate entities include, but are not limited to, Freightliner, Inc.*

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Daimler Trucks North America, LLC.

## DCo, LLC f/k/a Dana Companies, LLC

*At all times material herein, Defendant DCo, LLC f/k/a Dana Companies, LLC, a limited liability company organized in Virginia, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying asbestos-containing products, including automotive friction products. DCo, LLC f/k/a Dana Companies, LLC is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

Exhibit 1
Page 6 of 21

NOTICE OF REMOVAL
EXHIBIT 1

From 1969-1971, Decedent served in the US Army as an automotive mechanic in the motor pool where he worked on asbestos-containing brakes, clutches, and gaskets.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

From approximately 1977-1986, Decedent worked for Orchard Auto Parts in Roseburg, Oregon, and then the NAPA store in Canyonville, Oregon, both auto parts supply stores where he, as a parts counterperson, handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, and worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components.

From approximately the 1960s-2010s, Decedent performed non-occupational automotive repair and maintenance projects on his personal vehicles, including the manipulation and replacement of asbestos-containing brakes, clutches, and gaskets on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described

Exhibit 1
Page 7 of 21

above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by DCo, LLC f/k/a Dana Companies, LLC.

### Eaton Corporation

*At all times material herein, Defendant Eaton Corporation, an Ohio Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying asbestos-containing products, including automotive friction products. Eaton Corporation is named as a Manufacturer, Distributor, and Supplier Defendant.*

From 1969-1971, Decedent served in the US Army as an automotive mechanic in the motor pool where he worked on asbestos-containing brakes, clutches, and gaskets.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Eaton Corporation.

### FleetPride, Inc.

*At all times material herein, Defendant FleetPride, Inc., an Alabama Corporation, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying asbestos-containing products, including automotive friction products. FleetPride, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant FleetPride, Inc.'s alternate entities include, but are not limited to Friction Materials Co. and Specialized Sales and Service, Inc.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

Exhibit 1
Page **8** of **21**

NOTICE OF REMOVAL
EXHIBIT 1

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by FleetPride, Inc.

### Ford Motor Company

*At all times material herein, Defendant Ford Motor Company, a Delaware Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying asbestos-containing products, including automotive friction products. Ford Motor Company is named as a Manufacturer, Distributor, and Supplier Defendant.*

Exhibit 1
Page **9** of **21**

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately the 1960s-2010s, Decedent performed non-occupational automotive repair and maintenance projects on his personal vehicles, including the manipulation and replacement of asbestos-containing brakes, clutches, and gaskets on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Ford Motor Company.

### Genuine Parts Company

*At all times material herein, Defendant Genuine Parts Company, a Georgia Corporation, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying asbestos-containing products, including automotive friction products. Genuine Parts Company is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Genuine Parts Company's alternate entities include, but are not limited to, NAPA and National Auto Parts Association.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

Exhibit 1
Page **10** of **21**

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1977-1986, Decedent worked for Orchard Auto Parts in Roseburg, Oregon, and then the NAPA store in Canyonville, Oregon, both auto parts supply stores where he, as a parts counterperson, handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, and worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components.

From approximately the 1960s-2010s, Decedent performed non-occupational automotive repair and maintenance projects on his personal vehicles, including the manipulation and replacement of asbestos-containing brakes, clutches, and gaskets on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Genuine Parts Company. Decedent also purchased asbestos-containing automotive parts from Genuine Parts Company.

### Hennessy Industries, Inc. f/k/a AMMCO Tools, Inc.

*At all times material herein, Defendant Hennessy Industries, Inc., a Delaware Corporation, individually and through its predecessor in interest, AMMCO Tools, Inc., was engaged in the business of designing, manufacturing, selling, supplying, distributing, and specifying products to manipulate asbestos-containing products, including brake-grinding machines. Hennessy Industries, Inc. is named as a Manufacturer, Distributor, and Supplier*

Exhibit 1
Page 11 of 21

*Defendant. Defendant Hennessy Industries, Inc.'s alternate entities include, but are not limited to, AMMCO Tools, Inc.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Products to manipulate asbestos-containing automotive parts, including brake-grinding machines, were manufactured, distributed, and/or supplied by Hennessy Industries, Inc.

### Honeywell International, Inc.

*At all times material herein, Defendant Honeywell International, Inc., a Delaware Corporation, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Honeywell International, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Honeywell International, Inc.'s alternate entities include, but are not limited to, AlliedSignal, Inc. and The Bendix Corporation.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

Exhibit 1
Page **12** of **21**

From 1969-1971, Decedent served in the US Army as an automotive mechanic in the motor pool where he worked on asbestos-containing brakes, clutches, and gaskets.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

From approximately 1977-1986, Decedent worked for Orchard Auto Parts in Roseburg, Oregon, and then the NAPA store in Canyonville, Oregon, both auto parts supply stores where he, as a parts counterperson, handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, and worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components.

From approximately the 1960s-2010s, Decedent performed non-occupational automotive repair and maintenance projects on his personal vehicles, including the manipulation and replacement of asbestos-containing brakes, clutches, and gaskets on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described

Exhibit 1
Page **13** of **21**

above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Honeywell International, Inc.

## Lear Siegler Diversified Holdings Corporation

*At all times material herein, Defendant Lear Siegler Diversified Holdings Corporation, a dissolved Delaware Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products directly and through various predecessors and divisions within those companies, including but not limited to Lear Siegler, Inc. and Royal Industries, Inc. Lear Siegler Diversified Holdings Corporation is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Lear Siegler Diversified Holdings Corporation.

## Mack Trucks, Inc.

*At all times material herein, Defendant Mack Trucks, Inc., a Pennsylvania Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Mack Trucks, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts,

Exhibit 1
Page **14** of **21**

NOTICE OF REMOVAL
EXHIBIT 1

opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Mack Trucks, Inc.

### Metropolitan Life Insurance Company

*At all times material herein, Defendant Metropolitan Life Insurance Company ("Met Life"), a New York Corporation, was engaged in the business of providing a variety of insurance products, including life insurance, casualty and liability insurance, and workers' compensation insurance, to a variety of customers, including corporations engaged in the manufacture, distribution, and sale of asbestos and asbestos-containing products.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

### Morse Tec, LLC

*At all times material herein, Defendant Morse Tec, LLC, a limited liability company organized in Delaware, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Morse Tec, LLC is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Morse Tec, LLC's alternate entities include, but are not limited to, BorgWarner Morse Tec, LLC and BorgWarner Morse Tec Corporation.*

Exhibit 1
Page 15 of 21

NOTICE OF REMOVAL
EXHIBIT 1

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From 1969-1971, Decedent served in the US Army as an automotive mechanic in the motor pool where he worked on asbestos-containing brakes, clutches, and gaskets.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

From approximately 1977-1986, Decedent worked for Orchard Auto Parts in Roseburg, Oregon, and then the NAPA store in Canyonville, Oregon, both auto parts supply stores where he, as a parts counterperson, handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, and worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components.

From approximately the 1960s-2010s, Decedent performed non-occupational automotive repair and maintenance projects on his personal vehicles, including the manipulation and replacement of asbestos-containing brakes, clutches, and gaskets on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie

Exhibit 1
Page 16 of 21

NOTICE OF REMOVAL
EXHIBIT 1

McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Morse Tec, LLC.

### Navistar, Inc.

*At all times material herein, Defendant Navistar, Inc., a Delaware Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Navistar, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Navistar, Inc.

### Pneumo Abex, LLC

*At all times material herein, Defendant Pneumo Abex, LLC, a limited liability company organized in Delaware, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Pneumo Abex, LLC is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Pneumo Abex, LLC's alternate entities include, but are not limited to, Pneumo Abex Corporation, Abex Corporation, American Brake Shoe Company, American Brake Shoe and Foundry Company including the American Brakeblok Division, American Brake Shoe and Foundry Company, The American Brakeblok.*

Exhibit 1
Page 17 of 21

NOTICE OF REMOVAL
EXHIBIT 1

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From 1969-1971, Decedent served in the US Army as an automotive mechanic in the motor pool where he worked on asbestos-containing brakes, clutches, and gaskets.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

From approximately 1976-1977, Decedent worked for Allen Parts in Roseburg, Oregon, an automotive parts and service facility that supplied auto parts for and serviced automobiles, trucks, trailers, and other equipment. Decedent handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, riveted and otherwise relined asbestos-containing brakes, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, riveting and relining asbestos-containing brakes and the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles and equipment.

From approximately 1977-1986, Decedent worked for Orchard Auto Parts in Roseburg, Oregon, and then the NAPA store in Canyonville, Oregon, both auto parts supply stores where he, as a parts counterperson, handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, and worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components.

From approximately the 1960s-2010s, Decedent performed non-occupational automotive repair and maintenance projects on his personal vehicles, including the manipulation and replacement of asbestos-containing brakes, clutches, and gaskets on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie

Exhibit 1
Page **18** of **21**

NOTICE OF REMOVAL
EXHIBIT 1

McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Pneumo Abex, LLC.

### Titus-Will Enterprises, Inc.

*At all times material herein, Defendant Titus-Will Enterprises, Inc., a Washington Corporation, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, remanufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Titus-Will Enterprises, Inc. is named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Titus-Will Enterprises, Inc.'s alternate entities include, but are not limited to, TAM Engineering Corporation.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Titus-Will Enterprises, Inc.

Exhibit 1
Page **19** of **21**

NOTICE OF REMOVAL
EXHIBIT 1

**Toyota Motor Sales U.S.A., Inc.**

*At all times material herein, Defendant Toyota Motor Sales U.S.A., Inc., a California Corporation, was engaged in the business of designing, manufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products Toyota Motor Sales U.S.A., Inc. is named as a Manufacturer, Distributor, and Supplier Defendant.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Toyota Motor Sales U.S.A., Inc.

**Tracy Industries, Inc.**

*At all times material herein, Defendant Tracy Industries, Inc., a Michigan Corporation, individually and/or through one or more alternate entities was engaged in the business of designing, manufacturing, remanufacturing, selling, supplying, distributing, and/or specifying asbestos-containing products, including automotive friction products. Tracy Industries, Inc. is*

Exhibit 1
Page **20** of **21**

*named as a Manufacturer, Distributor, and Supplier Defendant. Defendant Tracy Industries, Inc.'s alternate entities include, but are not limited to, Genuine Parts Distributors.*

From approximately 1965-1969, Decedent worked at an automobile dealership where he worked on asbestos-containing brakes and clutches.

From approximately 1972-1976 and 1986-2010, Decedent worked in parts departments at automobile dealerships where he handled new and used asbestos-containing parts, opened boxes of asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and was present for or in the vicinity of automotive mechanics performing automotive maintenance and repair projects, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles.

Through the work herein described, Decedent was exposed to respirable asbestos dust from different asbestos-containing products. At all material times, Decedent was exposed to airborne asbestos fibers as a result of handling asbestos-containing products, working with and around asbestos-containing products, being in the vicinity of others working with and around asbestos-containing products, and through the clean-up and other disturbance of the resultant dust and debris.

From the mid-1970s-2010, Decedent's wife worked at auto parts stores and automobile dealerships where she handled new and used asbestos-containing parts, worked with, and around others working with, asbestos-containing brakes, clutches, gaskets, and other transmission parts/components, and, at the dealerships, was present for or in the vicinity of automotive repairs, including, but not limited to, the manipulation and replacement of asbestos-containing brakes, clutches, gaskets, and other transmission parts/components on various types of vehicles. Decedent was exposed to respirable asbestos dust which deposited on the person and clothing of Bonnie McGinnis during her employment at auto parts stores and automobile dealerships, as described above, and through the resulting asbestos fibers transported on her person and clothing to their car and home.

Asbestos-containing automotive parts were manufactured, distributed, and/or supplied by Tracy Industries, Inc.

Exhibit 1
Page 21 of 21

NOTICE OF REMOVAL
EXHIBIT 1

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF DOUGLAS
PROBATE DEPARTMENT

### Case No: 21PB05170

### LETTERS OF TESTAMENTARY

**In the Matter of the Estate of:** Michael Dale McGinnis

STATE OF OREGON )
       )ss.
County of Douglas )

 THIS CERTIFIES that the will of Michael Dale McGinnis, deceased, has been proven, and Bonnie McGinnis has/have been appointed and is/are at the date hereof the duly appointed, qualified and acting Personal Representative(s) of the estate the decedent.

 IN WITNESS WHEREOF, I, as Clerk of the Circuit Court of the State of Oregon for the County of Douglas, in which proceedings for administration upon the estate are pending, do hereby subscribe my name and affix the seal of this Court on this the 21st day of June, 2021.

DOUGLAS COUNTY CIRCUIT COURT

Signed: 6/21/2021 03 01 PM

J. Wattman, Circuit Court Clerk

 I certify that this copy of the Letters is a true, full and correct copy of the original Letters filed with this court.
 I further certify that the Letters are still in full force and have not been revoked or set aside.

 IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of this Court this _____ day of_____, 20____.

DOUGLAS COUNTY CIRCUIT COURT

By: _____
   Court Clerk

Letters of Testamentary DOU 10/19

1
**Certificate of Service**

2
***McGinnis v. Akebono Brake Company, et al.***

3
I hereby certify that I served the attached **DEFENDANT FORD MOTOR**

4
**COMPANY'S NOTICE OF REMOVAL** on the following person(s) on the date indicated

5
below by the method indicated below:

6
***By Email:***

| | |
|---|---|
| MAUNE RAICHLE HARTLEY<br>Alice Emerson<br>Kelly Battley<br>Daniel Casey Dineen<br>Sarah-Ray Rundle<br>80 SE Madison St., Ste 310<br>Portland OR 97214<br>orteam@mrhfmlaw.com<br><br>**Atty for Plaintiff** | FOLEY & MANSFIELD LLP<br>J. Scott Wood<br>James Hicks<br>851 SW Sixth Avenue, Suite 1375<br>Portland, OR  97204<br>asbestos-sea@foleymansfield.com<br><br>**Atty for Tracy Industries, Inc.; Eaton Corporation** |
| SCHWABE WILLIAMSON & WYATT<br>Jennifer Campbell<br>1420 5th Ave., Ste. 3400<br>Seattle WA 98101<br>jcampbell@schwabe.com<br><br>**Atty for Mack Trucks, inc.** | LEWIS BRISBOIS BISGAARD & SMITH LLP<br>George S. Pitcher<br>Jason Daywitt<br>Dimitriy Golosinski<br>888 SW Fifth Avenue, Suite 900<br>Portland, OR  97204<br>asbestospdx@lewisbrisbois.com<br><br>**Atty for Daimler Trucks North America LLC; Fleetpride, Inc.; Pneumo Abex LLC; Titus-Will Enterprises, Inc.** |
| ABBOTT LAW GROUP<br>Annalie M. Faddis<br>215 SW Washington Street, Suite 300<br>Portland, Oregon 97204<br>afaddis@abbott-law.com<br>spatterson@abbott-law.com<br><br>**Atty for Morse Tec LLC** | RIZZO MATTINGLY BOSWORTH PC<br>Claude Bosworth<br>Allen Eraut<br>Kevin Clonts<br>1300 SW Sixth Avenue, Suite 330<br>Portland, OR  97201<br>asbestos@rizzopc.com<br><br>**Atty for Akebono Brake Company; Cummins, Inc.** |

23

24

25

26

Page

1  -   CERTIFICATE OF SERVICE

| | |
|---|---|
| BULLIVANT HOUSER BAILEY PC<br>Katherine M. Steele<br>Jeanne Loftis<br>Diane Lenkowski<br>1700 Seventh Avenue, Suite 1810<br>Seattle, WA  98101<br>Asbestos@bullivant.com<br>Asbestos-pdx@bullivant.com<br><br>**Atty for Caterpillar, Inc.; Lear Siegler Diversified Holdings** | WILSON SMITH COCHRAN DICKERSON<br>John M. Silk<br>901 Fifth Avenue, Suite 1700<br>Seattle, WA  98164-2080<br>silk@wscd.com<br><br>**Atty for Metropolitan Life Insurance Co.** |
| GORDON THOMAS HONEYWELL<br>Michael Ricketts<br>520 Pike St., Ste. 2350<br>Seattle WA 98101<br>service@gth-law.com<br><br>**Atty for BWDAC; DCO LLC** | LANE POWELL<br>Jeffrey M. Odom<br>601 SW Second Avenue, Suite 2100<br>Portland, OR  97204-3158<br>odomj@lanepowell.com<br><br>**Atty for Genuine Parts Company** |
| GORDON & REES<br>Nancy Erfle<br>Molly McKay Williams<br>Mark Tuvim<br>1300 SW 5TH Ave., Ste. 2000<br>Portland OR 97201<br>seaasbestos@grsm.com<br><br>**Atty for Arvinmeritor, Inc.; Carlisle Industrial Brake & Friction, Inc.; Hennessy Industries LLC** | Erin Fraser<br>Perkins Coie LLP<br>1201 3rd Ave., Ste. 4900<br>Seattle WA 98101<br>HW_Asbestos_Sea@perkinscoie.com<br><br>**Atty for Honeywell International, Inc.** |
| THE GAITAN GROUP<br>Jose Gaitan<br>Virginia Leeper<br>411 University St., Ste. 1200<br>Seattle WA 98101<br>vleeper@gaitan-law.com<br>jgaitan@gaitan-law.com<br><br>**Atty for Toyota Motor Sales USA, Inc.** | |

Dated:  August 12, 2021.

s/ Daniel K. Reising
Mark J. Fucile, OSB No. 822625
Mark@frllp.com
Daniel K. Reising, OSB No. 964104
Dan@frllp.com
Attorneys for Defendants
Ford Motor Company and
Navistar, Inc.

fucile & reising LLP
2512 se 25th ave., ste 303
portland or 97202
p 503.224.4892 f 503.224.4332